UNITED STATES BANKRUPTCY COURT
EASETRN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:
    JAMES THOMAS DOVER                   Case No. 07-31836-dof
    and LILLIE MAE DOVER,                  Chapter 7 Proceeding
         Debtors.                               Hon. Daniel S. Opperman
_____/

FIFTH THIRD MORTGAGE – MI, LLC,

    Plaintiff,
v.                                                 Adversary Proceeding
                                                 Case No. 07-3203-dof

JAMES THOMAS DOVER
and LILLIE MAE DOVER,

    Defendants.
_____/

OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Both Fifth Third Mortgage – MI, LLC ("Plaintiff") and James and Lillie Dover ("Defendants") have filed a Motion for Summary Judgment. After consideration of the Briefs and oral argument, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for the reasons stated in this Opinion.

Facts

      Plaintiff alleges that, between 2001 and continuing through 2006, Defendants were involved in a mortgage fraud scheme that encompassed eleven different properties. On September 18, 2007, Defendant, James Dover, was charged with mortgage fraud with respect to three properties, which included one of the instances of fraud perpetrated against Plaintiff. Defendant, James Dover, pleaded guilty to those charges on July 6, 2007. Plaintiff alleges that after it discovered Defendant's fraud scheme and that the Defendants had caused a fraudulent release of lien to be recorded, it referred the matter to its counsel for legal action in the summer of 2006.

      On November 7, 2006, Defendants filed a Chapter 7 bankruptcy petition ("First Petition"), Case No. 06-32574. That petition was a skeleton petition, missing the Chapter 7 Means Test Form 22A, Attorney Disclosure Statement, Schedules A-J, Summary of Schedules,

1

and Statement of Financial Affairs. The Creditor Matrix included only one creditor. Defendants failed to list Plaintiff on the Creditor Matrix, and, consequently, Plaintiff did not receive actual notice of the First Petition. Plaintiff independently learned of the Defendants' filing on November 14, 2006, and it coded its collection database to reflect the Chapter 7 filing and set its system to check PACER for future filings. Plaintiff arranged to have its counsel attend the 341 Meeting of Creditors set for December 14, 2006. On November 20, 2006, Defendants filed a Motion to Voluntarily Dismiss their Chapter 7 case, which was granted on December 11, 2006.

After the First Petition was dismissed, Plaintiff coded its collection system to reflect that the Defendants were being pursued on account of the alleged fraud claim, and its counsel began drafting a complaint against Defendants, which it planned to file in the Oakland County Circuit Court. On April 26, 2007, before Plaintiff filed its complaint in the state court, Defendants filed a second Chapter 7 bankruptcy petition ("Second Petition"), Case No. 07-31394. The Second Petition was more complete than the First Petition, but it was again missing the Chapter 7 Means Test Form 22A, Attorney Disclosure Statement, Schedules A-J, Summary of Schedules, and Statement of Financial Affairs. Defendants listed Plaintiff on the Creditor Matrix. Plaintiff received actual notice of the Second Petition on April 26, 2007, and it was monitoring Defendants' second case as late as May 21, 2007. The Clerk of the Court filed a Notice of Missing Documents, and when Defendants failed to file the missing documents, the Court dismissed the Second Petition on May 24, 2007.

On June 7, 2007, the Defendants filed a Chapter 7 bankruptcy petition ("Third Petition"), Case No. 07-21836. The 341 Meeting of Creditors was set for July 16, 2007, and the dischargeability objection deadline was September 14, 2007. Plaintiff claims that, while it received actual notice of the Third Petition, it does not know who received the actual notice or how the notice was treated in the collection database. Plaintiff claims that a "systemic/process issue" occurred in its computer system because the loan had not been moved out of the bankruptcy queue upon the dismissal of the Second Petition and the system was not updated to show that the Third Petition had been filed. Plaintiff claims that, by the time it realized the Third Petition had been filed, the nondischargeability objection deadline had expired six weeks earlier.

On November 17, 2007, a little over two months past the dischargeability objection deadline and ten days after realizing that Defendants had filed the Third Petition, Plaintiff filed this adversary proceeding. On January 18, 2008, Plaintiff filed a Motion for Default Judgment

2

against Defendants. Defendants filed an Objection to Plaintiff's Motion for Default Judgment and a Corrected Answer to Complaint, which included a request that summary judgment be granted in their favor because of the untimeliness of the Complaint. On March 13, 2008, Plaintiff filed a document entitled Response to Defendants' Motion to Dismiss. On October 30, 2008, Plaintiff filed a Motion for Summary Judgment and on November 18, 2008, the Plaintiff filed a Certificate of Non-Response with regard to its Motion for Summary Judgment. On December 5, 2008, the Court entered an Order granting Plaintiff's Motion for Summary Judgment and holding the $908,953.39 debt owed by Defendants to Plaintiff nondischargeable.

Thereafter, Plaintiff filed numerous Writs of Garnishment, and, on September 17, 2012, Defendants filed a Motion for Installment Payments. The Court entered an Order Granting Defendants' Motion for Installment Payments on October 11, 2012.

The next day, Defendants filed an Emergency Motion to Vacate/Set Aside the December 5, 2008, Order Granting Summary Judgment in favor of Plaintiff. Plaintiff filed a Response to Defendants' Motion and on December 4, 2012, the Court held a hearing on Defendants' Motion. At that hearing, the Defendants argued that the Court had never ruled on their motion for summary judgment included in their Corrected Answer to Complaint filed on January 22, 2008. The Court indicated that what Defendants asserted was a motion for summary judgment was not properly labeled as such and did not properly comply with the requirements under Local Rule 9014-1 and, therefore, the Court would not rule on it. With respect to Defendants' Motion to Set Aside the Default Judgment, the Court held that, if Plaintiff's untimely Complaint would have been allowed under the doctrine of equitable tolling, Plaintiff's Judgment would be allowed to stand. On December 5, 2012, the Court entered an Order (1) granting Defendants' Motion in part and denying it in part; (2) denying Defendants' Motion under Federal Rule of Civil Procedure 60(b)(4); (3) holding Defendants' Motion under Federal Rule of Civil Procedure 60(b)(6) in abeyance until the completion of an evidentiary hearing with regard to whether Plaintiff had good cause to file the Complaint after the deadline; and (4) staying Plaintiff's actions to collect on the Judgment until further order of the Court. The Court then opened discovery with regard to the issue of whether the Plaintiff had good cause to file the Complaint after the deadline under the doctrine of equitable tolling.

## Arguments of Parties

Defendants filed the pending Motion for Summary Judgment. Defendants argue that the facts in this case are undisputed and that Plaintiff failed to establish that it had good cause to file the Complaint after the deadline. Plaintiff filed a Response to Defendants' Motion and filed a Cross-Motion for Summary Judgment. Plaintiff does not take issue with Defendants' assertion that the facts in this case are undisputed, but it claims that Defendants have overlooked certain important facts (mainly those relating to the serial bankruptcy filings), and it argues that it has established that it had good cause to file the Complaint after the deadline because the Defendants' serial bankruptcy filings caused the collection system error that lead to the late filing of the Complaint.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and E.D. Mich. LR 83.50. There are no limits on this Court's jurisdiction as set forth in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (I) (determinations as to the dischargeability of particular debts).

## Applicable Law

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056(c) which provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the

nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

In cases in which the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). That both parties simultaneously argue there are no genuine issues of material fact does not in itself establish that a trial is not necessary, and that one party has failed to sustain its burden under Federal Rule of Civil Procedure 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

<u>Doctrine of Equitable Tolling</u>

The deadline contained in Federal Rule of Bankruptcy Procedure 4007(c) to file an adversary complaint for nondischargeability is not jurisdictional. *In re Maughan*, 340 F.3d 337, 344 (6th Cir. 2003). Accordingly, this Court has jurisdiction to determine whether there is an equitable basis to toll the deadline imposed by Federal Rule of Bankruptcy Procedure 4007(c). In *Maughan*, the Sixth Circuit Court of Appeals set five factors the Court should consider:

1. Lack of actual notice of the filing requirement;
2. Lack of constructive knowledge of the filing requirement;
3. Diligence in pursuing one's rights;
4. Absence of prejudice to the defendant; and
5. A plaintiff's reasonableness of remaining ignorant of the notice requirement.

*Maughan*, 340 F.3d at 344 (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)).

In this case, the first two factors are not in favor of Plaintiff. Plaintiff does not claim that it did not receive actual knowledge of the filing of Defendants' Third Petition, nor does it claim that it did not waive its right to seek an extension of the deadline under Federal Rule of Bankruptcy Procedure 4007(c) when it did not file a motion to extend prior to the expiration of the deadline. Plaintiff claims that it was unaware of the Third Petition because of a "systemic/process issue" with its internal computer system and that, because the loan had not been moved out of the bankruptcy queue in its system upon the dismissal of the Second Petition, the system was not updated to show the Third Petition had been filed two weeks thereafter.

5

Plaintiff does not provide any reason or excuse for the computer error or its failure to provide some safeguard.

With regard to the third factor set forth in *Maughan* – the diligence in pursuing one's rights – Plaintiff maintains that, once it realized that the Defendants had filed the Third Petition (six weeks after the expiration of the deadline), it took prompt action and filed its Complaint on November 17, 2007 (ten days after learning of the Third Petition). Plaintiff argues that the Defendants' serial bankruptcy filings caused the system error that resulted in Plaintiff missing the deadline. In support of its position that it diligently pursued its rights, Plaintiff cites *Maughan*, *In re Stough*, No. 11-35232, 2012 WL 2563848 (Bankr. N.D. Ohio June 29, 2012), and *In re Buxton*, No. 05-63823, 2006 WL 3253163 (Bankr. N.D. Ohio Mar. 17, 2006).

In *Maughan*, the plaintiff did not claim lack of notice or knowledge of the filing deadline because that deadline was well known. Instead, the *Maughan* court focused on the diligence of the plaintiff in pursuing his rights and the resulting prejudice to the defendant. *Maughan* at 344. In *Maughan*, the defendant did not turn over documents voluntarily and, after plaintiff was forced to procure a court order compelling the defendant to produce documents, the defendant continued to delay in producing documents. The plaintiff in *Maughan* was diligent in seeking to enforce his rights and the delay of the defendant contributed to the plaintiff's failure to file his complaint timely. Moreover, the *Maughan* court found that the plaintiff could have filed a motion to extend the deadline and, in fact, filed that motion only three days after the deadline. Again, the *Maughan* court attributed this delay to being, in part, due to the defendant's actions.

Despite the fact that Plaintiff cited *Stough* in support of its argument that it acted diligently in pursuing its rights, the case, taken as a whole, does not support Plaintiff's argument. In *Stough*, the Court considered the five factors set forth in *Maughan* and concluded that, on the basis of equity, the factors did not, when considered as a whole, warrant extending the deadline on the basis of the doctrine of equitable tolling. In that case, notice to the plaintiff, a hospital with a cause of action against the defendant for workers' compensation fraud, was served on the plaintiff's affiliated entities but not actually served on the plaintiff. The Court found that the plaintiff had actual notice of the debtor's bankruptcy filing notwithstanding a minor addressing error. The Court further found that the plaintiff diligently pursued its rights where it (1) promptly filed its complaint after receiving a counterclaim in a worker's compensation matter wherein a violation of the automatic stay was alleged; (2) the plaintiff repeatedly contacted the

debtor's counsel in the worker's compensation case; and (3) the plaintiff brought suit against the debtor when its communications with debtors' counsel failed. The Court found that the defendant would not be prejudiced if forced to defend a nondischargeability action because the difficulties she articulated, such as having to shoulder additional legal fees and potential personal liability for the debt, were simply a result of the claim against her, and not the result of a change in her position based on her reliance on the plaintiffs' failure to timely file its complaint. The Court also found that there was no reasonable basis for the plaintiff to have remained ignorant of the debtor's bankruptcy for so long a duration where the debtor scheduled the plaintiff, as well as three of its agents, which went beyond the requirements under bankruptcy law for listing creditors on a debtor's schedules. As the *Stough* Court stated:

> To holding otherwise, and find the situation presented by The Toledo Hospital reasonable, would, in this Court's estimation, open the door to a wide range of other creditors who could likewise claim that they should be entitled to file an adversary proceeding outside the 60–day time limit of Bankruptcy Rule 4007(c). The Court is simply not willing to open the door that wide. This is particularly true considering that the Supreme Court of the United States has admonished that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato,* 549 U.S. 384, 396, 127 S. Ct. 1091, 1101, 166 L.Ed.2d 973 (2007).
>
> Moreover, as was the situation in *In re Maughan,* equitable tolling is normally only appropriate where the plaintiff had been misled or where evidence had been fraudulently concealed. *See Diamonds v. Yashaya (In re Yashaya),* 403 B.R. 278, 286 (Bankr. E.D. N.Y. 2009). Such a situation, however, is not present, contrary to the protestations of The Toledo Hospital. In particular, the Court rejects the argument put forth by The Toledo Hospital that the Debtor mislead it by failing to make an attempt to contact it directly regarding the bankruptcy case—*e.g.,* by placing a phone call to its legal counsel. (Doc. No. at pgs. 7–8).

*In re Stough*, 2012 WL 2563848, at *9.

Finally, Plaintiff cites *Buxton*. In that case, the plaintiff was the ex-wife of the defendant and had previously received a judgment against the defendant arising out of an obligation under their divorce decree. The defendant filed a Chapter 7 bankruptcy petition in 1999 and the plaintiff obtained a judgment declaring the debt owed to her to be nondischargeable. In 2002, the defendant filed a Chapter 13 bankruptcy petition, listing the plaintiff as a creditor on his Schedule F and on his Creditor Matrix. The Defendant filed a second Chapter 13 bankruptcy petition in 2005, listing the plaintiff on the Creditor Matrix, but not on his Schedules. The

plaintiff did not timely file a nondischargeability complaint, believing that the defendant was not seeking to discharge the debt owed to her in that case. That Court, considering the factors set forth in *Maughan*, concluded that the plaintiff was reasonable in assuming that the defendant would have listed her as a creditor on his Schedule F in his 2005 petition if he was attempting to discharge the debt owed to her. The *Buxton* Court stated:

> The circumstances were such that the need for the filing of a dischargeability complaint was disguised and Plaintiff was reasonable in remaining ignorant of the filing requirement. Further, Plaintiff pursued a course of action once the fact that Defendant was attempting to discharge the debt owed to her became clear. In addition, Defendant was not prejudiced as the court can complete the 523(a)(15) test based upon his *current* income and expenses. Applying the test for equitable tolling, the factors weigh in favor of Plaintiff.

*In re Buxton*, 2006 WL 3253163, at *6.

Here, it is clear that Plaintiff was diligently pursuing its rights against Defendant prior to the filing of the First Petition, after the dismissal of the First Petition, and prior to the dismissal of the Second Petition. Plaintiff was, at all times, taking actions to pursue its claims both in the state court and the bankruptcy court. Despite that diligence, however, Plaintiff's collection system was not updated when the Second Petition was dismissed or when the Defendants filed the Third Petition. Plaintiff has offered no evidence explaining why that system failure occurred or why there was not some action taken by a human employee when the notice of the Third Petition was received. It is also clear that Plaintiff acted promptly once it realized the Third Petition had been filed. Plaintiff filed the Complaint ten days after it claims to have learned that the Defendants filed the Third Petition. While Plaintiff was diligently pursuing its rights, that is only one factor to be balanced along with the other four factors articulated by *Maughan*.

With regard to the fifth factor articulated by *Maughan* – the plaintiff's reasonableness of remaining ignorant of the notice requirement – Plaintiff argues that it was Defendants' own conduct that caused Plaintiff to miss the filing deadline and that, but for Defendants' serial bankruptcy filings, Plaintiff would have timely filed its adversary complaint. While it is clear that Defendants' serial bankruptcy filings may have caused confusion in the Defendants' computer collection system, the dismissal of the Second Petition was readily apparent and Plaintiff received actual notice of the filing of the Third Petition. Beyond arguing that the

Defendants' serial filings caused failure in Plaintiff's computer system, Plaintiff argues that the serial filings are evidence of an attempt by the Defendants to frustrate their creditors.

Without more evidence of some bad faith on the part of the Defendants, other than the serial filings, or more evidence regarding what actually occurred in Plaintiff's office after it received notice of the Third Petition, the factors weigh in favor of the Defendants.

Accordingly, Plaintiff has not met the *Maughan* factors. Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. The Court will enter an Order consistent with this Opinion.
.

**Signed on June 21, 2013**

                                          **/s/ Daniel S. Opperman**
                                          **Daniel S. Opperman**
                                          **United States Bankruptcy Judge**